DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                       Plaintiff,

     -against-

FRANK SCHWAMBORN,

                       Defendants.
----------------------------------------X

**OPINION & ORDER**
06-CR-0328 (SJF)

FEUERSTEIN, J.

I.    Introduction

On May 19, 2006, Defendant Frank Schwamborn ("Defendant" or "Schwamborn") was charged in Indictment CR-06-328 with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Schwamborn moves (1) to dismiss the indictment; and (2) to have the government provide him with (a) a Bill of Particulars; (b) conversations that the government intends to use at trial; (c) additional discovery; and (d) all items that were seized during the execution of a search warrant that the government does not intend to use as evidence at trial.

Schwamborn's motions are denied in their entirety.[1]

II.    Prior Cases and Procedural History

On April 25, 2001, Schwamborn was among twenty-five (25) defendants charged in

---

[1] The government's motion papers in opposition to Defendant's omnibus motion contain details and facts that are partially responsive to some of Defendant's discovery requests. The motions are denied except insofar as the Government has already responded.

1

Indictment CR-01-416 (U.S. v. Aparo et al.) in the Eastern District of New York in Brooklyn (the "2001 Indictment"). The indictment charged Schwamborn with racketeering, conspiracy to commit racketeering, mail fraud, wire fraud, conspiracy to commit mail and wire fraud, interstate transportation of a stolen security and conspiracy to launder money. These charges stemmed from an alleged scheme to defraud an undercover entity of the FBI, Cascade Capital International. On October 15, 2002, Schwamborn entered a plea of guilty to, *inter alia*, Count 27 of Indictment CR-01-416 (S-6), conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and was sentenced to fifty-five (55) months of imprisonment, which he has served.

On October 24, 2002, while Schwamborn was incarcerated under Indictment CR-01-416 (S-6), Criminal Complaint 02-1860-M was filed, alleging that Schwamborn had committed conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to invest drug proceeds in violation of 21 U.S.C. § 854, and conspiracy to launder both drug proceeds and the proceeds of securities fraud involving World Cyberlinks,[2] in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (1)(B)(i) and (h) (the "2002 Complaint"). The 2002 Complaint was dismissed without prejudice on September 2, 2003.

On May 19, 2006, Defendant was indicted in the present case (Indictment CR-06-328) for (1) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (1)(B)(i) and (h); and (2) investing the proceeds of (a) securities fraud in violation of 15 U.S.C. § 78j(b) and Rule 10-b5 of the Rules and Regulations of the Securities and Exchange Commission, and (b) mail fraud in violation of 18 U.S.C. § 1341 (the "2006 Indictment").

The present motion predates Superseding Indictment CR-06-328 (S-1), which was returned

---

[2] A publicly-held New York corporation allegedly controlled by Schwamborn.

on October 5, 2007, charging Schwamborn with (1) conspiracy to commit securities fraud in violation of 18 U.S.C. §§ 1348 and 3551 et seq., (2) securities fraud in violation of 18 U.S.C. §§ 1348 and 3551 et seq., (3) conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371 and 3551 et seq., (4) mail fraud in violation of 18 U.S.C. §§ 1348 and 3551 et seq. and (5) conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h) and 3551 et seq. (the "2007 Indictment").

II. Double Jeopardy

Defendant claims that his guilty plea to the 2001 Indictment (CR-01-416-S-6) for conspiracy to launder two checks, which were the proceeds of mail fraud, precludes his prosecution for laundering the proceeds of the World Cyberlinks stock fraud, because it is a second prosecution for the same offense after conviction and could result in of multiple penalties for the same conduct.

Pursuant to the Fifth Amendment to the United States Constitution, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense.'" Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003). The Double Jeopardy Clause protects defendants against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple penalties for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Double jeopardy clearly "prohibits a second prosecution for the same offense following a guilty plea." Morris v. Reynolds, 264 F.3d 38, 49 (2d Cir. 2001); see United States v. Aliotta, 199 F.3d 78, 83 (2d Cir. 1999) (observing that, "[a]s a general rule, jeopardy attaches in a criminal case at the time the district court accepts the defendant's guilty plea").

The Double Jeopardy Clause applies only where successive prosecutions or multiple

3

charges in the same prosecution involve the "same offense." United States v. Urserv, 518 U.S. 267, 273 (1996). The Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932), established that whether prosecutions are for the same "offense" depends on an examination of the elements of the crimes charged. When the offenses do not have identical elements, no double jeopardy exists because each offense "requires proof of a fact which the other does not." Id. The 2006 Indictment (CR-06-328) charges money laundering of the proceeds of a stock fraud. The 2001 Indictment (CR-01-416-S-6) charged money laundering of the proceeds of mail fraud. Thus, for the purposes of the Blockburger test, the 2006 Indictment charges a different offense than the 2001 Indictment did.

Nor can Schwamborn claim that he is being prosecuted twice for the same conspiracy. A defendant has the burden of making a "nonfrivolous double jeopardy showing that two indictments charge only one conspiracy." United States v. Del Vecchio, 800 F.2d 21, 22 (2d Cir. 1986). Under the 2006 Indictment (CR-06-328), the alleged period of the conspiracy (between June 1995 and October 2002), the co-conspirators (Robert Schwickrath, Dana Lang, John Notarianni, John F. Russell and Kathleen Ferraro Schwamborn), the amount of money ("at least $4.5 million") and the underlying facts of the crime which produced the illegal proceeds are all factually separate and distinct from the crime of conspiracy to launder money to which Schwamborn pled guilty under the 2001 Indictment (CR-01-416-S-6).

Schwamborn asserts that the conspiracy to which he pled guilty was a single overarching conspiracy to promote the conduct of the Genovese Organized Crime Family, covering all similar crimes in promotion of organized crime, charged and uncharged, known and unknown. This argument is belied by the plea agreement which clearly limited his criminal liability to the specific

charges in the 2001 Indictment (CR-01-416-S-6). The quotes relied upon by Defendant from the pre-sentence report in the 2001 Indictment (CR-01-416-S-6) are not part of his offense conduct, but refer instead to the offense conduct of David Grossman ("Grossman"), who pled guilty to a separate information charging stock fraud involving World Cyberlinks. Defendant's Motion, p. 36-7.

Schwamborn's assertion that he expected to have his criminal liability involving World Cyberlinks resolved by his plea is incredible, because he knew at the time that separate charges for his World Cyberlinks conduct were pending before a separate federal judge in Central Islip and were the subject of separate negotiations with the government.

Insofar as Defendant claims double jeopardy based on the fact that both indictments contained allegations under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*) ("RICO"), successive RICO prosecutions do not violate double jeopardy, so long as the enterprise or the pattern of racketeering activity are not the same. See United States v. Russotti, 717 F.2d 27, 33 (2d Cir. 1983) ("Therefore, in order for the present indictment to give rise to a valid claim of double jeopardy, both the enterprise and the pattern of activity alleged in the 1976 indictment must be the same as those alleged in the 1982 indictment. If either is different, there is no infirmity under the double jeopardy clause.") (emphasis in original); see also United States v. Langella, 804 F.2d 185, 188-89 (2d Cir. 1986). To determine whether distinct patterns of racketeering exist, a court should examine the: (1) time of the alleged activities, (2) parties involved and (3) statutory offenses charged, as well as (4) the nature and scope of the activity sought to be punished and (5) where the corrupt activity allegedly took place. Langella, at 189 (no double jeopardy violations where the specific acts were subject to different modes of prosecution); Russotti, at 33.

Despite some overlap in the periods of alleged conduct and co-conspirators, the 2001 Indictment alleged several specific acts between October 1999 and February 2000, while the 2006 Indictment[3] alleges additional conduct between 1995 and 2002, and the 2006 Indictment names additional co-conspirators not named in the 2001 Indictment. And, while the 2001 Indictment merely referred to some conduct in the metropolitan New York area (New Jersey, New York City and Long Island), the 2006 Indictment charges Defendant with a scheme that involved multiple shell companies, at least one of which was incorporated in the Isle of Man.

With respect to the statutory offenses charged by the two indictments, the 2001 Indictment charged Schwamborn with laundering the proceeds of wire fraud (as a result of a fraudulent check-cashing scheme), but the 2006 Indictment charges Defendant with laundering the proceeds of securities fraud (as a result of a "pump-and-dump" stock manipulation scheme).

Furthermore, when considering the nature and scope of the activities, the "most significant factor" in the analysis, Russotti, 717 F.2d at 34, the check-cashing scheme alleged in the 2001 Indictment to which Schwamborn pled guilty is significantly different from the stock manipulation scheme alleged by the 2006 Indictment.

It is clear that the "pattern of activity" charged in the 2001 Indictment is not the same as the one charged in the 2006 Indictment. Thus, Schwamborn has been charged with two distinct and separate offenses, and no double jeopardy exists.

III. Sufficiency of Indictment

---

[3] The additional discovery provided by the government in its response to Defendant's instant motion is included in this analysis.

6

Defendant also contends that the 2006 Indictment is insufficient. An indictment is facially valid and sufficient if it contains the elements of the offense(s) charged, fairly informs a defendant of the charges against which he must defend and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir.), cert. denied, 504 U.S. 926 (1992); United States v. Ferrara, 701 F. Supp. 39 (E.D.N.Y. 1988).

Fed. R. Crim. P. 7 (c) (1) provides that "the indictment . . . shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." United States v. Macklin, 927 F.2d 1276 (2d Cir.), cert. denied, 502 U.S. 847 (1991). Indictments that track the statutory language defining an offense are, as a general rule, sufficient under Rule 7(c) so long as application to a particular defendant is clear. United States v. Upton, 856 F. Supp. 727, 739 (E.D.N.Y. 1994) (citing Hamling, 418 U.S. at 117-118).

The indictment need not allege "with technical precision" all the elements of the substantive offense, although it must track the language of the statute and allege the underlying facts. United States v. LaSpina, 299 F.3d 165, 177-78 (2d Cir. 2002). An indictment which alleges conspiracy to transport funds with the intent to promote a specified unlawful activity, and specific intent to commit the substantive money laundering offense is sufficient. United States v. Bodmer, 342 F. Supp. 2d 176, 192 (S.D.N.Y. 2004).

Based upon the foregoing, the 2006 Indictment is sufficient.

IV.   Pre-Indictment Delay

Schwamborn claims that he was not indicted in a timely fashion, in violation of his

7

constitutional due process and statutory speedy trial rights.

A.   Speedy Trial Act Claims

Schwamborn contends that the 2002 Complaint (02-1860-M) was improperly dismissed without prejudice and that this Court should therefore dismiss the present indictment.

A criminal defendant must be indicted within thirty (30) days of arrest and brought to trial within seventy (70) days after arrest. 18 U.S.C. § 3161(c)(1). See also Zedner v. United States, 126 S. Ct. 1976, 1983 (2006).

The 2002 Complaint (02-1860-M) was filed on October 22, 2002, and Schwamborn was arrested on October 24, 2002. On August 20, 2003, Schwamborn moved to dismiss the complaint with prejudice pursuant to 18 U.S.C. § 3162(a), citing a delay of more than thirty (30) days without indictment, and seventy (70) days without trial following his arrest. The government cross-moved to dismiss without prejudice, claiming that the delay was inadvertent, and that it had, in fact, timely moved to dismiss the 2002 Complaint, but the motion had not been docketed. Magistrate Judge Wall granted the government's cross-motion and dismissed the complaint without prejudice on September 2, 2003, finding that the delay was inadvertent.

Defendant contends that the record does not demonstrate fully why the dismissal was without prejudice. However, in "the absence of any remarks by the district judge indicating doubt on a point of law, or as to the options available, a reviewing court should not deem silence an indication that the district court misunderstood its authority." United States v. Lainez-Leiva, 129 F.3d 89, 93 (2d Cir. 1997). The record shows that Magistrate Judge Wall considered the arguments of both parties and articulated his reasons for his order pursuant to 18 U.S.C. §1362(a)(1), which provides:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

Applying these factors to the 2006 Indictment, (1) the charged crime of stock manipulation was "serious"; (2) the government's explanation of its delay as inadvertent was credible; and (3) the impact of a dismissal without prejudice would not adversely impact the administration of justice or the Speedy Trial Act. Accordingly, this Court finds that the Magistrate Judge's ruling was proper, and Defendant's claims under the Speedy Trial Act are denied.[4]

B.  Fifth Amendment Due Process Claims

Schwamborn claims that the delay between his alleged criminal conduct and the 2006 Indictment violates his rights under the Due Process Clause of the Fifth Amendment. U.S. Const. Amend. V.

To succeed in establishing a due process claim based on pre-indictment delay, the defendant bears the heavy burden of showing: (1) that the defendant was actually prejudiced, and (2) that any pre-indictment delay was intentionally caused by the prosecution to obtain some tactical advantage. See Denis v. Upstate Correctional Facility, 361 F.3d 759, 760 (2d Cir. 2004)(citing United States v.

---

[4]Dismissal of the 2002 Complaint is not appealable prior to trial. "A defendant does not have standing to appeal a dismissal because he is not legally aggrieved by the termination of the prosecution. This is so even if the dismissal is without prejudice and thereby leaves the defendant open to further prosecution. If the defendant is reindicted on the same charge and if he is convicted, he could then raise on an appeal from the final judgment of conviction, the question of whether dismissal of the earlier indictment should have been with prejudice." United States v. Reale, 834 F.2d 281, 282 (2d Cir. 1987) (internal citations omitted).

Marion, 404 U.S. 307, 324 (1971)); United States v. Hoo, 825 F.2d 667, 671 (2d Cir. 1987); see also Buie v. Sullivan, 923 F.2d 10, 13 (2d Cir. 1990) (where the good-faith investigation by the prosecution did not give rise to a due process violation); United States v. Langella, 776 F.2d 1078, 1083 (2d Cir. 1985) (where a three-year delay, because of a need to maintain secrecy in a related investigation, was found not to be improper); Lainez-Leiva, 129 F.3d at 92 (where the 270-day delay was not prejudicial because it was a result of "government's inadvertence rather than misconduct").

If the district court finds that the delay caused no actual prejudice to the defendant, the matter is resolved and the analysis does not consider the government's reasons for the delay. Schwamborn's contention that the defense will suffer from impaired witness recollection is insufficient, as no particularized facts are asserted. United States v. Elsbery, 602 F.2d 1054, 1059 (2d Cir. 1979) (where the fading of witnesses' memories did not amount to prejudice); see also Parrilla v. Goord, No. 02 CV 5443, 2005 WL 1422132, *8 (S.D.N.Y. 2004). Nor does loss of opportunity to have concurrent sentences constitute a legally cognizable prejudice. Lainez-Leiva, 129 F.3d at 92. Moreover, Defendant's claim of intentional delay is wholly unsupported.

As Defendant has failed to demonstrate either intentional delay or actual prejudice, his motion to dismiss based upon Fifth Amendment due process claims is denied.

C. Sixth Amendment Speedy Trial Rights

Schwamborn also asserts that the pre-indictment delay amounted to a violation of his Sixth Amendment right to speedy trial.   U.S. Const. Amend. VI.

A court assessing a Sixth Amendment speedy trial challenge applies a four-factor test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's timely assertion of the right;

and (4) prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514, 530 (1972) (footnote omitted). First, though the government's delay in bringing the 2006 Indictment was significant, "time can tilt the case against either side, [and] one cannot generally be sure which of them it has prejudiced more severely," and though "excessive delay presumptively compromises the reliability of a trial[,] ... such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria...." Doggett v. United States, 505 U.S. 647, 655-656 (U.S. 1992). However, the record does not support Defendant's claim that the government intentionally delayed its prosecution. Thus, this factor does not strongly advance Defendant's claim. As to the timeliness of Defendant's assertion of his speedy trial claim, the 2006 Indictment was returned in May 2006, but Defendant did not raise this argument until the end of March 2007, weighing against Defendant's claim.

Finally, Defendant's claimed prejudice is no more persuasive here than in his claim of Fifth Amendment delay. Thus, this significant factor does not weigh in Defendant's favor.

In sum, an analysis of the Barker factors does not indicate a violation of Defendant's Sixth Amendment right to speedy trial. Therefore, Schwamborn's motion to dismiss based upon pre-indictment delay is denied.

VI. Complex Case Designation

The defendant also claims that his earlier agreement to a complex case designation was insufficiently informed, and now wishes to revoke that designation. Defendant's assertions that the prosecution requested a complex case designation as a "means of frustrating defendant's right to a speedy trial" and that defense counsel agreed before having an opportunity to review the entire file

and discovery are not supported by the record. (Defendant's Notice of Omnibus Motion, pp. 13-14).

In July 2006, the government submitted a Memorandum of Law in support of a motion to declare the case complex under 18 U.S.C. § 3161 (h) (8) (B) (ii), due to the number of individuals involved, the voluminous documents and records and the nature of securities fraud violations.

On July 20, 2006, the defense requested a one week adjournment to review the motion. Defendant's counsel indicated he was "not able to take a position on the complexity issue at this time" and admitted that since he would not be able to go to trial within the 70-day statutory time period that Schwamborn "is willing to waive speedy trial . . . to conform to [counsel's] schedule." Transcript of Proceedings, July 20, 2006, p. 3. On July 26, 2006, defense counsel specifically consented to the complex case designation, stating: the "government filed a complex case motion and the defense does not oppose that. Upon review of certain discovery, upon review of the motion, we do not oppose that at this time." Schwamborn contends that this statement indicated that some 'future' review of the motion was needed. (Transcript of Proceedings, July 26, 2006.)

However, at a status conference on January 25, 2007, in response to the government's reference to the case being complex, defense counsel Corozzo stated, "I agree with the characterization." (Transcript of Proceedings, January 25, 2007, p. 3.) Thus, counsel repeatedly agreed to the complex case designation.

In determining whether a case is complex, a court must consider, *inter alia*, whether the nature of the case is so "unusual and complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established." (18 U.S.C. § 3161 (h) (8) (B) (ii).) Thus, regardless of defense counsel's consent, and

considering all of these factors, the case is properly designated as complex.

VII.  Bill of Particulars

Schwamborn also demands a bill of particulars, discovery of particular witnesses' proposed testimony against him, and an explanation of how the government intends to use items seized pursuant to search warrants. He is not entitled to such relief, except insofar as the government has already complied.

The defendant claims a bill of particulars is necessary because the current indictment charges him with the same crime to which he previously pled guilty. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).

The purpose of a bill of particulars is to inform a defendant of the charges against him with enough specificity to allow him to prepare an adequate defense, to avoid or minimize the danger of surprise at trial, or to enable him to defend himself against Double Jeopardy. Wong Tai v. United States, 273 U.S. 77, 82 (1927); Bortnovsky, 820 F.2d at 574. The decision to grant a defendant's request for a bill of particulars is within the sound discretion of the Court. United States v. Panza, 750 F.2d 1141 (2d Cir. 1984). Such requests are appropriately granted, however, only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. United States v. Crozzoli, 698 F. Supp. 430, 435 (E.D.N.Y. 1988).

It is not the function of a bill of particulars to provide a detailed analysis of the government's evidence or theory of the case. See United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974) (government not required to disclose its evidence in advance of trial); United States v. Schwimmer, 649 F. Supp. 544 (E.D.N.Y. 1986) ("Government is not required . . . to disclose evidence . . . or its

legal theory . . . Nor may it be forced to describe the precise manner in which the crime is alleged."); United States v. Weinberg, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987) ("the ultimate test of the appropriateness of a bill of particulars is whether the information is <u>necessary</u>, not whether it is helpful to the defendant.") (emphasis added); United States v. Torres, 901 F.2d 105, 234 (2d Cir. 1990), cert. denied, Cruz v. United States, 111 S.Ct. 273 (1990).

Furthermore, because a bill of particulars "confines the government's proof to the particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the government's ability to present its case". United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). See also, United States v. Leonelli, 428 F. Supp. 880, 882 (S.D.N.Y.), aff'd, 317 F.2d 459 (2d Cir.), cert. denied, 375 U.S. 836 (1963). If a defendant has been given adequate notice of the charges against him in the indictment or in some alternate form, the government need not be required to disclose additional details about the case. Bortnovsky, 820 F.2d at 574.

The indictment, the discovery previously provided and the details contained in the government's response to this motion, have provided Defendant with sufficient notice of the charges against him.

VIII. Further Discovery

Insofar as Schwamborn requests pre-trial discovery of David Grossman's testimony claiming attorney-client privilege, those conversations are non-privileged due to the crime-fraud exception. In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1994) (quoting In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984)).

14

The crime-fraud exception removes those attorney-client communications that are "in furtherance of contemplated or ongoing criminal or fraudulent conduct" from the attorney-client privilege. Id. The purpose of the crime-fraud exception is to "assure that the seal of secrecy between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (quoting United States v. Zolin, 491 U.S. 554, 563, 105 L. Ed. 2d 469, 109 S. Ct. 2619 (1989)).

To invoke the crime-fraud exception, the government need only demonstrate that: (1) there is a factual basis to believe that a fraud or crime has been committed and (2) the communications in question were in furtherance of the fraud or crime. Id. The claimed factual basis must strike a "prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." Id. Since Grossman's communications relate to his own guilty plea to stock fraud and the activities of Defendant, his co-conspirator, the government has met its burden and the motion is denied.

Finally, Schwamborn requests that the government return all seized property that it does not intend to use at trial. In seeking the return of property while a criminal prosecution is pending, Schwamborn has the burden of showing that he is entitled to the property. United States v. Gotti, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003). Such a motion "is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continue[s]." Id. The government indicates its intent to maintain the property in question "in order to have it available should it be necessary in either [its] case in chief or rebuttal," (Opposition to Defendant's Motions, p. 51) and

Defendant has failed to demonstrate his entitlement to the property. Thus, the motion is denied.

IX. Conclusion

Except to the extent that the government has complied, Defendant's motions are DENIED.

IT IS SO ORDERED

_____
Sandra J. Feuerstein
United States District Judge

Dated: November 13, 2007
Central Islip, New York