```
                                                                    FILED
                                                              IN CLERK'S OFFICE
                                                           U S DISTRICT COURT E D N Y
UNITED STATES DISTRICT COURT                              ★    DEC 03 2012    ★
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X        LONG ISLAND OFFICE
UNITED STATES OF AMERICA,

                - against -                               ORDER
                                                          06-CR-328 (SJF)

FRANK SCHWAMBORN,

                        Defendant.
-----------------------------------------------------X
```

FEUERSTEIN, J.

Before the Court is the Government's application for an order of restitution in the amount of one hundred eighty-two thousand twenty-two dollars and ninety-four cents ($182,022.94). [Docket Entry Nos. 178, 180]. For the reasons that follow, the Government's application is granted.

I.  Background

On March 18, 2009, defendant Frank Schwamborn ("defendant") entered a plea of guilty to one (1) count of securities fraud, in violation of 18 U.S.C. § 1348. [Docket Entry No. 91]. Specifically, defendant pleaded guilty to knowingly and intentionally executing a scheme, together with others, to defraud persons in connection with the sale of the common stock of an entity known as World Cyberlinks Corp. See Superseding Indictment [Docket Entry No. 51] at 10-11. On April 26, 2010, the Court sentenced him to a term of one hundred twenty-one (121) months' imprisonment and five (5) years' supervised release. [Docket Entry No. 144]. At the time of sentencing, the Court deferred ruling on the issue of restitution, but noted that it would be set in an amount "[t]o be determined." Id. at 5.

1

On July 23, 2010, the Government filed an application for restitution in the amount of one million two hundred seventy-eight thousand three hundred fifty dollars and eleven cents ($1,278,350.11) on behalf of one hundred eighty-six (186) victims. [Docket Entry No. 154]. In support of this request, the Government submitted two (2) lists of victims and their respective losses, each of which consisted of the victim's name, his or her place of residence, and his or her loss amount. [Docket Entry Nos. 154-2, 154-3]. The first, compiled by the Financial Institution Regulatory Authority ("FINRA"), listed losses in the amount of seven hundred eighty-two thousand six hundred thirty-seven dollars and eighty-three cents ($782,637.83) by one hundred fifty-five (155) victims. According to the Government, FINRA created this list by reviewing and analyzing broker records. The second, compiled by the Government, listed losses in the amount of four hundred ninety-five thousand seven hundred twelve dollars and twenty-eight cents ($495,712.28) by thirty-one (31) victims and was based upon affidavits of loss or the victims' losses which were confirmed telephonically. [Docket Entry No. 154].

On January 17, 2011, the Government lowered its restitution request to four hundred fifteen thousand four hundred fifty dollars and eight cents ($415,450.08) on behalf of thirty (30) victims. In its application, the Government stated that it "no longer [sought] restitution for losses telephonically confirmed or those on the FINRA list." [Docket Entry No. 168]. On January 28, 2011, the Court entered an order directing defendant to pay restitution in the amount of four hundred thirteen thousand four hundred fifty dollars and eight cents ($413,450.08). [Docket Entry No. 171].

By summary order dated March 16, 2012, the United States Court of Appeals for the Second Circuit vacated the order of restitution, (1) noting that the reduction in the Government's

request from one million two hundred seventy-nine thousand three hundred fifty dollars and eleven cents ($1,279,350.11) to four hundred thirteen thousand four hundred fifty dollars and eight cents ($413,450.08) "suggests that this latter amount does not represent the 'actual loss' to the victims as required by the statute," and (2) finding the Government's proof of the victims' actual losses to be insufficient.

On May 4, 2012, the Government renewed its application for an order of restitution, and now seeks one hundred eighty-two thousand twenty-two dollars and ninety-four cents ($182,022.94) on behalf of seven (7) victims. [Docket Entry Nos. 178, 180]. The application is supported by affidavits, brokerage account statements, and trade confirmations demonstrating the amount of each victim's loss. Defendant opposes the application in its entirety, arguing that: (1) the Government is not seeking to recover the victims' "actual loss," as required by the Mandatory Victim Restitution Act of 1996 ("MVRA"); and (2) Second Circuit precedent precludes recovery because the victims cannot show that they relied upon a material misrepresentation in purchasing the securities or that they sold the securities into a market containing such information. [Docket Entry No. 179].

The Court held a hearing on the issue of restitution on May 30, 2012 and reserved decision.

II. Analysis

    A. Restitution Standard

"Federal courts have no inherent power to order restitution. Such authority must be conferred by Congress through statute." United States v. Gottesman, 122 F.3d 150, 151 (2d Cir. 1997) (internal quotation marks omitted). "A sentencing court's power to order restitution,

therefore, depends upon, and is necessarily circumscribed by, statute." United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012). "The goal of restitution, in the criminal context, is to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." United States v. Battista, 575 F.3d 226, 229 (2d Cir. 2009) (internal quotation marks omitted).

"The Mandatory Victims Restitution Act . . . provides, in part, that in sentencing a defendant convicted of a felony committed through fraud or deceit, the court must order the defendant to pay restitution to any identifiable person directly and proximately harmed by the offense of conviction." United States v. Reifler, 446 F.3d 65, 113 (2d Cir. 2006) (citing 18 U.S.C. § 3663A(a)(2)).[1] A court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "Because the purpose of restitution is essentially compensatory, and because the MVRA itself limits restitution to the full amount of each victim's loss, a restitution order must be tied to the victim's actual, provable, loss." Zangari, 677 F.3d at 91 (internal quotation marks and citations omitted). Therefore, it is the Government's burden to prove the victims' actual loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

B.  Complexity of the Issues Presented

As a threshold matter, the Court considers whether "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden

---

[1] An "offense committed by fraud or deceit" includes, inter alia, offenses involving pump-and-dump schemes. Reifler, 446 F.3d at 121.

4

on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

Generally, there may be "complexities inherent in calculating the loss amount" in criminal stock fraud cases, as "[m]any factors may cause a decline in share price between the time of the fraud and the revelation of the fraud [and] . . . [l]osses from causes other than the fraud must be excluded from the loss calculation." United States v. Rutkoske, 506 F.3d 170, 178-79 (2d Cir. 2007) (internal quotation marks and citation omitted). "[T]he court must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes." United States v. Zolp, 479 F.3d 715, 719 (9th Cir. 2007). Here, determining the effect of defendant's fraud on the stock price is not unduly complicated. Defendant was responsible for inflating the price of securities that were inherently worthless; World Cyberlinks produced nothing, earned nothing, and had no assets. In short, the victims' loss on the stock is solely attributable to the fraud. See Rutkoske, 506 F.3d at 180 n. 4 (noting that had the defendant "promoted worthless stock in worthless companies," the entire loss would be attributable to fraud); see also United States v. Gushlak, No. 03-CV-833, 2012 WL 1379627, at *2 (E.D.N.Y. Apr. 20, 2012) (noting that defendant in "pump-and-dump" scheme is liable for full amount of investor's loss when "pumped" stock is for company with no assets or earnings). Therefore, the issues of fact surrounding the amount of the victims' losses are not unduly complicated.

Furthermore, as discussed in further detail below, the task of determining the cause of the victims' loss is not unduly difficult or burdensome.

Therefore, the Court concludes that the issues in the calculation of restitution are not so complex as to outweigh the need to provide restitution to the victims.

C. Defendant's Arguments

1. Supporting Evidence

Defendant objects to the evidence of loss submitted by the Government, arguing that it consists only of "un-notarized statements and letters attaching documents purporting to be samples of the individuals' brokerage statements and trade confirmations for online trades . . . ." Defendant's Letter dated May 17, 2012 ("Def. Ltr.") [Docket Entry No. 179] at 3. The Government's most recent submissions, coupled with the original affidavits of loss, [Docket Entry No. 158], adequately establish by a preponderance of the evidence that these seven (7) victims suffered losses of one hundred eighty-two thousand twenty-two dollars and ninety-four cents ($182,022.94). Each victim has submitted an affidavit attesting to the amount of loss incurred, along with supporting documentation establishing the date and price of their stock purchases. [Docket Entry Nos. 158, 178, 180]. The Government's revised submission demonstrates that the current restitution request is not a "rough estimate" of the victims' losses, and defendant has provided no basis for questioning the veracity of the affidavits or authenticity of the supporting documents. Therefore, the Court finds that the Government has met its burden to demonstrate the victims' actual losses by a preponderance of the evidence.

2. Causation

A "victim" for purposes of the MVRA is a person who was "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). These causation requirements reflect "Congress' interest in maintaining efficiency in the sentencing process." Reifler, 446 F.3d at 135.

Defendant argues that (1) the Government cannot demonstrate that his fraud was the

6

direct and proximate cause of the victims' losses, and (2) the victims are not eligible for restitution because they would not have standing to bring a civil securities fraud action, as they did not actually sell their securities, but merely held them until they became worthless. Def. Ltr. at 2. This argument is without merit.

In determining the issue of causation for restitution purposes, the principles governing civil securities fraud cases may be applied. See Reifler, 446 F.3d at 136-37. As the court stated in Reifler:

> "To prevail in a civil action under [Rule 10b-5], a plaintiff is required to prove, inter alia, that he was a buyer or a seller of the securities in question and that the defendant made a material misrepresentation, or omitted a material fact as to which disclosure was required, on which the plaintiff relied."

446 F.3d at 135 (citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749 (1975) (emphasis added). Regardless of whether the victims sold their securities before they became worthless, the victims purchased the securities in reliance upon defendant's material misrepresentations or omissions and would have standing to bring a civil action. See Reifler, 446 F.3d at 136 ("Rule 10b-5 . . . has not been extended to allow suits by persons who were neither buyers in reliance on a defendant's material misrepresentation/omission nor sellers at all, but rather were persons who simply held their stock until it became worthless.") (emphasis added). As discussed above and in further detail in the Superseding Indictment, the stock had no inherent value and, if not for defendant's "pump and dump" scheme, would have been worthless. Therefore, the victims' purchase of the stock at any price was necessarily in reliance on defendant's misrepresentations and omissions.

III. Conclusion

For the foregoing reasons, the Government's application is granted. The judgment [Docket Entry No. 144] shall be deemed amended to reflect an order of restitution in the amount of one hundred eighty-two thousand twenty-two dollars and ninety-four cents ($182,022.94).

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:  December 3, 2012
        Central Islip, New York